# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Dec 17 2015, 7:51 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANTS PRO SE

Barry B. Eskanos
Ami B. Eskanos
Miami Beach, Florida

ATTORNEYS FOR INTERVENOR
JPMORGAN CHASE BANK, N.A.

David J. Jurkiewicz
Nathan T. Danielson
Bose McKinney & Evans LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Barry B.Eskanos and Ami B. Eskanos,

*Appellants-Plaintiffs,*

v.

Washington Mutual Bank, FA,

*Appellee-Defendant,*

and

JPMorgan Chase Bank, N.A.,

*Intervenor.*

December 17, 2015

Court of Appeals Case No.
41A01-1410-MI-427

Appeal from the
Johnson Superior Court

The Honorable
Kevin M. Barton, Judge

Trial Court Cause No.
41D01-1405-MI-90

**Kirsch, Judge.**

[1] Barry B. Eskanos and Ami B. Eskanos (collectively, "the Eskanoses") appeal the trial court's order that found them in contempt. They raise several issues that we consolidate and restate as: whether the trial court abused its discretion when it held the Eskanoses in contempt for attempting to enforce a vacated Florida judgment and for failing to appear for a show cause hearing.

[2] We affirm.

## Facts and Procedural History

[3] On November 12, 2013, a Miami-Dade County, Florida Circuit court ("the Florida court") issued a default judgment ("the Judgment") in favor of the Eskanoses and against Washington Mutual Bank, FA ("the Bank") in the amount of approximately $264,000,000. On February 23, 2014, the Florida court issued an order that vacated the Judgment, declared the Judgment void *ab initio*, and dismissed the Eskanoses' case against the Bank with prejudice. The Eskanoses filed a motion for rehearing and reconsideration in March 2014; the Florida court did not rule on their motion.

[4] In April 2014, the Eskanoses filed in the Johnson County, Indiana Superior court ("the Indiana trial court") a pro-se Ex-Parte Application for Issuance of Writ of Execution of the Judgment("the Application"). The Application sought to enforce the Judgment against property formerly owned by the Bank that was then being held by the Office of the Indiana Attorney General, Unclaimed Property Division. The Eskanoses represented in the Application that, with costs and interest, the Bank "has an unpaid balance of $1,056,000,439.75" that

was "due and owing" to the Eskanoses. *Chase App*. at 5. Initially, the Indiana trial court issued an order on May 22, 2014 granting the Application and issuing a Writ of Execution to the Indiana Attorney General.

[5]     JPMorgan Chase Bank, N.A. ("Chase"), an intervening or interested party in the Florida action, filed a Notice with the Indiana trial court, advising that the Florida court had vacated the Judgment on February 23, 2014.[1] On May 31, the Indiana trial court entered an order vacating its May 22 order that had issued the Writ of Execution. Finding that the Eskanoses "knew, or should have known, that the Default Judgment that they sought to enforce had been vacated," the Indiana trial court ordered the Eskanoses to appear to show cause why they should not be found in contempt. *Id*. at 23-24.

[6]     Thereafter, the Eskanoses filed a "Response to the Order to Show Cause" and a "Motion to Strike" the filing of the Florida court's February 23 order that vacated the Judgment.[2] *Id*. at 25. The Eskanoses also filed a motion to continue the show cause hearing. The Indiana trial court denied the Eskanoses' Motion to Strike, but it granted their request for a continuance, setting the

---

[1] The Florida court vacated the Judgment upon Chase's motion to vacate the Judgment or stay execution of it. Chase provided a certified copy of the Florida court's order that vacated the Judgment, declared the Judgment void *ab initio*, and dismissed the Eskanoses' case against the Bank. Later, Chase also submitted to the Indiana trial court a copy of the transcript from the hearing on their motion to vacate, at the conclusion of which the Florida court declared the Judgment to be void.

[2] The Eskanoses asserted, among other things, that the Florida court's February 23 order, which vacated the Judgment, was void because (1) it was issued on a Sunday, (2) there was "a federal 180-day stay" in place in that action, which precluded the Florida court from acting, and (3) they had filed a motion for reconsideration in the Florida court. *Chase App*. at 25-34.

hearing for September 4, 2014. The Eskanoses failed to appear for the September 4 show cause hearing. Thereafter, the Indiana trial court entered its Order of Contempt, holding the Eskanoses in contempt for their failure to appear and for seeking to enforce the Judgment. The Eskanoses now appeal.

## Discussion and Decision

[7] Initially, we observe that the Eskanoses filed their appeal pro se. "An appellant who proceeds pro se "is held to the same established rules of procedure that a trained legal counsel is bound to follow and, therefore, must be prepared to accept the consequences of his or her action." *Thacker v. Wentzel,* 797 N.E.2d 342, 345 (Ind. Ct. App. 2003). In this case, the Eskanoses' appellate brief included multiple and pervasive failures to comply with our appellate rules, which presented obstacles to our review of the issues. Their Statement of the Case is defective in a number of respects. It is not limited to a brief description of the nature of the case and relevant proceedings, as is required by Indiana Appellate Rule 46(A)(5); rather, it is a lengthy discussion primarily devoted to proceedings in the Florida court (and, it seems, other ancillary actions in other Florida or federal courts). Moreover, the Statement of the Case contains argument, which is inappropriate, and it almost completely fails to provide citation to the record. The Eskanoses' Statement of Facts likewise fails to comply with our appellate rules. Indiana Appellate Rule 46(A)(6)(a) requires that an appellant's statement of the facts be supported by page references to the appendix; the Eskanoses' Statement of Facts makes no citation to the record whatsoever, and it contains argument, which is not appropriate in that section.

We also note that the Eskanoses' brief does not include the applicable standard of review of a contempt order. *See* Ind. Appellate Rule 46(A)(8)(b) ("The argument must include for each issue a concise statement of the applicable standard of review; this statement may appear in the discussion of each issue or under a separate heading placed before the discussion of the issues."). The Eskanoses also fail to present any argument as to why their absence at the show cause hearing should be excused. This court has discretion to dismiss an appeal for the appellant's failure to comply with the Rules of Appellate Procedure. *Miller v. Hague Ins. Agency, Inc.*, 871 N.E.2d 406, 407 (Ind. Ct. App. 2007). However, we prefer to dispose of cases on their merits, and we do so here.

[8] "[A]mong the inherent powers of a court is that of maintaining its dignity, securing obedience to its process and rules, rebuking interference with the conduct of business, and punishing unseemly behavior." *City of Gary v. Major*, 822 N.E.2d 165, 169 (Ind. 2005) (citing *State v. Shumaker,* 200 Ind. 623, 157 N.E. 769, 775 (1927)). Indirect contempt is the willful disobedience of any lawfully entered court order of which the offender has notice, and it "arises from conduct not occurring in the presence of the court, such as a failure of a party to obey a court order or process." *Riggin v. Rea Riggin & Sons, Inc.*, 738 N.E.2d 292, 310 (Ind. Ct. App. 2000). In general, contempt of court involves disobedience that undermines the court's authority, justice, and dignity. *Major*, 822 N.E.2d at 169. Our legislature has recognized our court's inherent power to cite and punish for contempt in Indiana Code section 34-47-3-1, which provides in relevant part: "A person who is guilty of any willful disobedience of

any process, or any order lawfully issued . . . by any court of record . . . is guilty of an indirect contempt of the court that issued the process or order."

[9] In order to be held in contempt for failure to follow the court's order, a party must have willfully disobeyed the court order. *Ind. High Sch. Athletic Ass'n v. Martin,* 765 N.E.2d 1238, 1241 (Ind. 2002). The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. *Major*, 822 N.E.2d at 170. The determination of whether a party is in contempt of court is a matter left to the discretion of the trial court. *Id*. at 171. When reviewing a contempt order, this court neither reweighs the evidence nor judges the credibility of the witnesses. *Mitchell v. Mitchell*, 785 N.E.2d 1194, 1198 (Ind. Ct. App. 2003). We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding. *Major*, 822 N.E.2d at 171.

[10] Here, the Eskanoses failed to appear at the show cause hearing, and there is no indication or argument that they did not receive notice of it. They have offered no explanation or justification as to why their absence at the show cause hearing should be excused.[3] Accordingly, the Eskanoses have failed to show

---

[3] The chronological case summary, *Appellants' App*. at 6, reflects that the Eskanoses filed a motion to continue on September 9, which was five days after the show cause hearing occurred. The trial court denied the motion, noting it was untimely. *Id*.

that the trial court abused its discretion when it found them in contempt for their failure to appear.

[11] Although the trial court acted within its discretion to enter the order of contempt based solely upon their failure to appear at the show cause hearing, the trial court also held the Eskanoses in contempt for their lack of candor with the trial court. It found,

> By their verified Ex-Parte Application For Issuance of Writ of Execution and Affidavit of Service . . . the [Eskanoses] falsely represented to the Court that they possessed a valid judgment when in fact [they] knew or should have known that the [J]udgment that they sought to enforce was void.

*Appellants' App.* at 11. Based upon such "misrepresentations," the trial court found each of them in contempt of court. *Id.*

[12] On appeal, the Eskanoses contend that they "are being held in contempt for failing to disclose a void, non-final, un-rendered order issued on a Sunday by a Judge who no longer had jurisdiction to make any further rulings in the matter." *Appellants' Br.* at 19. The Eskanoses arguments about whether the order was void, non-final, or issued without jurisdiction, while lengthy, are not well-organized, focused on the current proceedings in Indiana and the resulting issues, or supported by citation to relevant case law.[4] Therefore, their claims

---

[4] The Eskanoses brief and two appendices include significant discussion, pleadings, and documentation related to proceedings including mortgage foreclosure, claims of fraudulent transfer asserted against the Bank, rescission of assignments, removal to federal court, discovery, bankruptcy, and other matters not

are waived for failure to present cogent argument. App. R. 46(a)(8)(a); *Perry v. Anonymous Physician 1*, 25 N.E.3d 103, 105 n.1 (Ind. Ct. App. 2014) (citing *Thacker*, 797 N.E.2d at 345), *trans. denied, cert. denied,* 136 S. Ct. 227 (2015)).

[13]     To the extent that the Eskanoses claim the Florida court's February 23 decision to vacate the Judgment was void because it was entered on a Sunday, and thereby was in violation of Florida Statute section 48.20, that statute is entitled "Service of process on Sunday."[5]  The Eskanoses have provided no authority for the proposition that the Florida court's order was automatically void because it was entered on a Sunday.  Furthermore, they have not shown, or even argued, that they were in some way prejudiced by the order's issuance or email service of it to counsel on Sunday.  We thus reject the claim that the Florida court's February 23 order was void.  *See Loehrke v. State*, 722 N.E.2d 867, 870 (Fl. App. Ct. 1998) (rejecting defendant's claim that service and execution of search warrant was void because it was executed on Sunday where defendant neither argued nor established prejudice).

---

related to this appeal.  This required us to sift through a blizzard of unnecessary and often unrelated materials, which impeded our appellate review.

[5] Florida Statute section 48.20 reads:  Service or execution on Sunday of any writ, process, warrant, order, or judgment is void and the person serving or executing, or causing it to be served or executed, is liable to the party aggrieved for damages for so doing as if he or she had done it without any process, writ, warrant, order, or judgment.  If affidavit is made by the person requesting service or execution that he or she has good reason to believe that any person liable to have any such writ, process, warrant, order, or judgment served on him or her intends to escape from this state under protection of Sunday, any officer furnished with an order authorizing service or execution by the trial court judge may serve or execute such writ, process, warrant, order, or judgment on Sunday, and it is as valid as if it had been done on any other day.

The Eskanoses also argue that the Florida court did not have subject matter jurisdiction to enter the February 23 order, which vacated the Judgment that they sought to enforce by writ in Indiana. While their argument is not entirely clear, it appears that their position is that the Florida court lost subject matter jurisdiction because Chase "asserted FIRREA[6] on behalf of the FDIC" and the Eskanoses filed a notice of 180-day stay. *Appellants' Br.* at 21, 25. In support of their position, the Eskanoses cite to 12 U.S.C. § 1821(d)(13)(D).[7] Section 13 outlines "[a]dditional rights and duties" of the FDIC as a conservator or receiver, here presumably of the Bank's assets that the Eskanoses were attempting to obtain through litigation in Florida. Subsection (D) concerns "limitation of judicial review" and by its language appears to limit a court's jurisdiction over actions "for payment from, or action seeking a determination of rights with respect to" the assets of any depository institution for which the FDIC was appointed receiver. Assuming without deciding that the statute might preclude the Florida court from determining any issues regarding the

---

[6] FIRREA stands for the Financial Institutions Reform, Recovery & Enforcement Act of 1989.

[7] Title 12 of the United States Code section 1821(d)(13)(D) reads:

Limitation on judicial review

Except as otherwise provided in this subsection, no court shall have jurisdiction over--

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

Eskanoses' specific rights with respect to the Bank's assets, the Eskanoses have not provided us with any authority that the Florida court could not vacate and find void its own previously-issued default judgment. "[W]e will not become an advocate for a party, nor will we address arguments which are either inappropriate, too poorly developed or improperly expressed to be understood." *Thacker*, 797 N.E.2d at 345 (citations and internal quotations omitted).

[15] The Eskanoses also appear to argue that the Florida court's order (vacating the Judgment) was "not final" because the Eskanoses filed in March 2014 a motion for reconsideration or rehearing[8] under Florida Rule of Civil Procedure 1.530(a), and because a motion to reconsider was pending, the Indiana trial court could not issue the contempt order. *Appellants' Br*. at 19, 27-28. They assert that "[the Florida court's] jurisdiction continues until the motion is disposed of[.]" *Id*. at 28. Again, we are unpersuaded. First, we note, this position of continuing jurisdiction is entirely contrary to their position, discussed above, that the Florida court did *not* have jurisdiction. Second, even assuming that they are correct that the Florida court's jurisdiction "continues" as alleged, they have not cited to any authority for the proposition that the Indiana trial court could not issue an order finding them in contempt. To the extent that they claim their filing of the motion to reconsider "supend[ed] rendition of a final order," *Appellants' Br*. at 27, we reject that as well. Under

---

[8] We note that the Eskanoses' Motion for Rehearing or Reconsideration is sixty-six pages in length. *Appellants' App*. at 74-140.

Florida Rule of Appellate Procedure 9.020(g), an order is "rendered" when a signed, written order is filed with the clerk of the lower tribunal. *Sumner v. Bd. of Trs., City of Pensacola Firefighters' Relief & Pension Fund*, 78 So.3d 124, 124 (Fl. Ct. App. 2012). Here, the record reflects that the Florida court submitted signed copies of the February 23 order vacating Judgment "to the Clerk of Courts for filing in the Court file." *Appellants' App*. at 237.

[16] The trial court did not abuse its discretion when it found the Eskanoses to be in contempt for their failure to appear at the show cause hearing or for their lack of candor with regard to a prior Florida court order vacating and holding void the Judgment that they sought to enforce in Indiana.

[17] Affirmed.

Najam, J., and Barnes, J., concur.